# IN THE COURT OF APPEALS OF IOWA

No. 19-0630
Filed July 24, 2019

**IN THE INTEREST OF K.A., K.M., and K.P.,**
**Minor Children,**

**K.A., Mother,**
       Appellant.

_____

Appeal from the Iowa District Court for Scott County, Cheryl Traum, District Associate Judge.

A mother appeals the district court's separate orders terminating her parental rights to her three children K.A., K.M., and K.P. **AFFIRMED.**

Christine Frederick of Zamora, Woods, Taylor & Frederick, Davenport, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

G. Brian Weiler, Davenport, guardian ad litem for minor children.

Considered by Potterfield, P.J., and Doyle and May, JJ.

**POTTERFIELD, Presiding Judge.**

The mother of minor children K.A. and K.M., full siblings, and K.P., their half-sibling, appeals the termination of her parental rights. The juvenile court terminated the mother's parental rights to K.A. and K.M. under Iowa Code sections 232.116(1)(d), (e), (f), (i), and (*l*) (2018) and her parental rights to K.P. under Iowa Code section 232.116(1)(d), (e), (h), (i), and (*l*) in two separate orders.[1] The mother does not challenge the district court's determination that the State met its burden to show the statutory grounds for termination. She only argues terminating her parental rights is not in the children's best interest and she should have instead been given additional time to work toward reunification. For the reasons described below, we conclude termination is proper.

### I.     Background.

K.A., K.M., and K.P. were born in 2008, 2012, and 2017, respectively. The Iowa Department of Human Services (DHS) first came into contact with the family in April 2017 in response to reports of a physical altercation between the mother and K.P.'s father and substance abuse in the children's presence. On May 1, 2017, a hair analysis was performed on K.A. and K.M. K.P., being a baby, had too little hair to be tested. K.M.'s hair tested positive for cocaine. Each child was adjudicated a child in need of assistance (CINA) on August 3, 2017, and remained in their mother's custody under DHS supervision. At that same adjudicatory hearing, the juvenile court directed the mother to comply with a DHS case plan. The case plan required the mother to complete substance-

---

[1] The juvenile court also terminated the parental rights of both K.A. and K.M.'s father and K.P.'s father. Neither appeals.

abuse and mental-health treatment, as well as establish stable housing. Following a removal hearing on December 6, 2017, the children were placed in foster care.[2] The juvenile court held a permanency hearing on September 25, 2018, during which the court determined the mother had not made sufficient progress toward resolving the issues noted in the case plan and directed DHS to file a petition to terminate the mother's and both fathers' parental rights. DHS filed a petition to terminate the mother's and both fathers' parental rights on November 29, 2018. The juvenile court terminated the mother's and both fathers' parental rights on March 29, 2019, and the mother appealed.

## II. Discussion.

We review termination cases de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).

We apply a three-step analysis to review termination-of-parental-rights cases. *In re A.S.,* 906 N.W.2d 467, 472 (Iowa 2018). First, we determine whether "any ground for termination under section 232.116(1) has been established." *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). If we determine a ground for termination has been established, we apply the best-interest framework described in section 232.116(2). *A.S.*, 906 N.W.2d at 472; *M.W.*, 876 N.W.2d at 219–20. "Finally, if we conclude the statutory best-interest framework supports termination, 'we consider whether any exceptions in section 232.116(3)

---

[2] The mother had a fourth child in September 2018. That child was removed from the mother's care when born and placed in the same foster home as K.A., K.M., and K.P.

apply to preclude termination of parental rights.'" *A.S.*, 906 N.W.2d at 473 (quoting *M.W.*, 876 N.W.2d at 220). The mother does not challenge the juvenile court's determination that the State has shown the statutory grounds for termination under Iowa Code section 232.116(1). Instead, she only argues terminating her parental rights is not in the children's best interest. We need not address whether the State has met its burden under section 232.116(1). *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

Under section 232.116(2)'s best-interest framework, we must "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental and emotional condition and needs of the child." On de novo review, we conclude termination of the mother's parental rights to the children is in their best interest.

The case plan required the mother to resolve her problem with substance abuse. She has not made meaningful progress toward that goal, and has demonstrated an unwillingness to participate in treatment. She completed a substance-abuse evaluation and began participating in a substance-abuse program in December 2017. She was then referred to inpatient treatment due to continued use and was removed from the program in March 2018 for poor attendance and drug use while in the program. DHS requested fourteen random drug screenings from the mother throughout the proceedings. She tested negative on only one screening; she did not attend nine screenings and tested positive for methamphetamine on four screenings. She was admitted to Area Substance-Abuse Council (ASAC) in Cedar Rapids for substance-abuse treatment in February 2019, but was removed from the program a week later for

bringing drugs into the facility. She was arrested on drug-related charges later that same month and was in jail awaiting trial at the time of the termination hearing. She was released from jail on April 25, 2019, and was discharged from substance-abuse treatment due to not attending two days later.

Other factors weigh in favor of termination. The mother has failed to address mental-health concerns. The case plan required the mother to complete a psychological evaluation and participate in treatment. She completed the first half of an evaluation in January 2018, but did not complete the second half for another six months. DHS recommended she attend therapy, which she has not done. The mother has also failed to address the housing and domestic violence concerns present since these proceedings began. At the time of the August 2017 adjudicatory order, the mother's home was deemed unlivable. Since then, she has lived with relatives, in various hotel rooms, and at one point out of a van until she was arrested in February 2019. She has lived in at least two different places, at least one of which was a hotel, since being released from jail in April 2019. The mother also failed to address concerns over domestic-violence. She has maintained her relationship with K.P.'s father, who was involved in the domestic-violence incident which led to these proceedings. He was also arrested with the mother in February 2019. The mother has not engaged in any services related to domestic violence, and continued to deny domestic violence was ever an issue through the date of the termination hearing. The mother was still in a relationship with K.P.'s father after being released from jail in April 2019, and informed a substance-abuse treatment coordinator that she was living in a hotel.

On appeal, the mother requests additional time to work toward reunification, and insists she can now maintain sobriety and resolve her issues. *See In re M.R.,* 2013 WL 5498097, at *3 (Iowa Ct. App. Oct. 2, 2013) ("To grant a parent a reprieve from termination, a juvenile court must be able to 'enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period.'" (quoting Iowa Code § 232.104(2)(b)). In the time since these proceeding began in March 2017, the mother has not successfully addressed any of the concerns described above. It is not incumbent on children to wait for their parents to learn how to be parents. "[O]ur legislature has carefully constructed a time frame to provide a balance between the parent's efforts and the child's long-term best interests." *In re. D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). "We do not 'gamble with the children's future' by asking them to continuously wait for a stable biological parent . . . ." *Id.* (quoting *In re D.W.*, 385 N.W.2d 570, 578 (Iowa 1986)). K.A., K.M., and K.P. have waited more than a year for the mother to resolve the issues keeping her from taking care of them. She has not done so. Because of the mother's unresolved substance-abuse, mental-health, domestic-violence, and housing issues, we conclude termination of her parental rights is in the best interest of the children.

Once we have established that termination of the mother's parental rights is in the children's best interests, we consider whether any of the factors weighing against termination in section 232.116(3) apply. The 232.116(3) factors "are permissive, not mandatory." *M.W.*, 876 N.W.2d at 225. "We may use our

discretion, 'based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship.'" *Id.* (quoting *A.M.*, 843 N.W.2d at 113). "[T]he parent resisting termination bears the burden to establish an exception to termination . . . ." *A.S.*, 906 N.W.2d at 476.

Most relevant here is section 232.116(3)(c), which permits the court to not terminate parental rights where "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." The record suggests the mother has a strong bond with the children. There is no evidence, however, that terminating the bond would be detrimental to the children due to the closeness of their relationship. A March 2019 foster review board report noted the children had adapted well to their foster home. The same report also noted only K.A. reacted negatively when visits with the parents were cancelled. We conclude the mother has not met her burden to show by clear and convincing evidence that terminating her parental rights would be detrimental to the children.

**AFFIRMED.**